**LOUISVILLE AUTOMOBILE CLUB et al.,**
Appellants,

v.

**DEPARTMENT OF INSURANCE, Common-**
wealth of Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 16, 1964.

Rehearing Denied Dec. 18, 1964.

Stanley B. Mayer, Louisville, Mayer, Cooper & Kiel, Louisville, of counsel, for appellant.

J. Donald Dinning, Oldham Clarke, Mc-Elwain, Dinning, Clarke & Winstead, Louisville, and Watters & Donovan, New York City, of counsel, for appellee.

CLAY, Commissioner.

This is an appeal from a judgment of the Franklin Circuit Court confirming an order of the Commissioner of Insurance, which approved a change of automobile liability insurance rates upon the application of a licensed rating organization. The principal contentions are that the Insurance Commissioner violated "due process" by proceeding without a public hearing, and his approval of the new rates was arbitrary, unreasonable and capricious.

This proceeding originated under KRS 304.627. On November 15, 1962 the National Bureau of Casualty Underwriters, representing 95 insurance companies writing automobile liability insurance in Kentucky, filed a request for approval of revised rates on private passenger cars, commercial cars and garages. On January 2, 1963 the Commissioner, acting through one of his agents, notified the applicant that its "filing" had been approved, and the new rates became effective on January 9.[1]

Shortly thereafter the Louisville Automobile Club informally protested this action and the Commissioner scheduled a public hearing. Proof was taken before Hon. James W. Stites, a Special Deputy Commissioner appointed to conduct the hearing. He filed a complete and comprehensive report in which he found the new rates valid and proper. They were reconfirmed by a subsequent order of the Insurance Commissioner. On petition for review under KRS 304.050 the circuit court approved and affirmed this last order.

Appellants contend the original order approving these revised rates was void because no public hearing was held in advance of the approval. The statute, KRS

---

[1]. Approved rates were: (1) increase of 10 percent for private passenger cars, (2) increase of 14.9 percent for garage risks, (3) reduction of 7.4 percent for commercial cars. These changes affected only members and subscribers of the Bureau.

304.627(6), does not require a public hearing. It provides in part:

"The commissioner may, when he deems it to be in the public interest, hold a public hearing on any filing before said filing becomes effective * * *."

In April 1959 the Commissioner had promulgated a regulation which purported to require a public hearing on all rate filings (made by a rating organization) which proposed "an increase in the cost to the public of any insurance * * *". However, this regulation also provided:

"(c) The commissioner may, by proper notice, inform the rating organization making the filing within 10 days after the receipt thereof that no public hearing will be required concerning such filing."

The regulation also provided that nothing therein should be construed to change or vary any law pertaining to the regulation of insurance.

█ It is appellants' contention that their right to "due process" was violated when the Commissioner failed initially to conduct a public hearing as provided in the regulation. The problem actually does not involve "due process" because appellants had no *constitutional* right to be heard. Such right (if any) is only created by KRS 304.628(4) (which was complied with in this case), KRS 304.634(2) (which is not here invoked), or by the regulation to which we have just alluded.

█ The Special Deputy Commissioner took the view that the regulation, to the extent it purported to require a public hearing in all cases falling within a designated category, was in conflict with the statutory provision (KRS 304.627(6) ) which left it to the discretion of the Commissioner in each case whether a public hearing should be held. This conclusion appears in conflict with the principle stated in Becker v. Yeary, Ky., 278 S.W.2d 632.

However, appellants acquired no right to be heard under the regulation. Section (c) thereof, which we have above quoted, provided that the Commissioner could dispense with a public hearing. He thus retained the discretionary authority vested in him by the statute.

It may be observed that even if the Commissioner should have held a public hearing before approving the rate increases, appellants have not shown themselves to be prejudiced because after a full public hearing the propriety of the rate increases was confirmed. The problem presented by appellants, which only concerns the effectiveness of the new rates during the period from January 9, 1963 to March 19, 1963, when the last order of the Commissioner was entered, would only arise if such order, which we will hereafter consider, was invalid. We do not find it so.

Appellants contend the Commissioner acted arbitrarily, unreasonably and capriciously in approving the new rates. At the outset we may observe that insurance companies are not public utilities and it is not the function or duty of the Commissioner of Insurance to fix insurance rates. This is a highly competitive business, and constantly changing conditions make necessary innumerable general and particular rate adjustments. The statute imposes upon the Commissioner of Insurance the function of promoting the public welfare by "regulating" insurance rates for the protection of both the public and the insurance companies. For this reason the Commissioner is authorized to review insurance rates from time to time and to regulate them only to the extent they shall not be "excessive, inadequate or unfairly discriminatory". KRS 304.600, 304.625(1) (d). The question before the Commissioner was, and before us is, whether the proposed increased rates were "excessive". Appellants concede it is incumbent upon them to show that the Commissioner's decision on this issue was arbitrary, unreasonable and capricious.

The establishment of an economically sound and adequate insurance rate in any category is obviously a complicated process. The premium rate must be correlated to loss experience. It is necessary for the insurance companies (and the Commissioner) to rely principally upon statistical data and a projected premium—loss ratio. The case for the rating bureau was made principally by its expert rating witness Mr. McNamara, whose testimony the Special Deputy Commissioner accepted as credible and as justifying the rate changes.

While admitting that the actuarial calculations of Mr. McNamara were accurate from a mathematical standpoint, it is appellants' contention that improper factors were taken into consideration or that proper parties were omitted. It is said that it was not shown the companies represented by the Bureau were in a financial plight. The simple answer to that argument is that the statute does not require such a showing to justify a rate increase, and obviously it would not be in the best interests of the public or the insurance companies if rate changes could not be made prior to the threat of insolvency.

Appellants cite Thurman v. Meridian Mutual Insurance Company, Ky., 345 S.W. 2d 635, for the proposition that an insurer's solvency is a dominating consideration in the regulation of rates. That case involved an application to *reduce* a rate. In such a situation the ability of a company to operate on a lesser premium without impairing its financial stability is an important factor the Commissioner must take into account to protect the public interest. This consideration does not have similar significance when increases are sought.

■ Appellants next contend the new rates were based upon the loss experience of companies other than those represented by the Bureau. This is authorized by KRS 304.626(1) and also KRS 304.627(1).

■ It is next contended the loss experience was limited to $5,000–$10,000 liability coverage, whereas the compulsory coverage under KRS 187.330 was raised to $10,000–$20,000 in 1962, and, in any event, a substantial amount of this insurance is written with the 10/20 limit. The proof was that the Bureau did not have sufficient statistical data to utilize the 10/20 limit policy experience and that increasing the 5/10 rate by 15 percent was a universally accepted method of fixing a proper rate for the higher policy limits.

■ Appellants complain the Bureau did not base its calculations on its most recent experience with a new insurance plan (described as "merit rating" or "safe driver") which was designed to reduce traffic accidents and stimulate safer driving practices. The answer is that the companies had not had sufficient experience under this new plan to use the data in formulating the new rates. It is obviously impossible for a new rate, the day its becomes effective, to reflect the most recent loss experience, and this was adequately explained by the Bureau's expert witness.

■ It is further contended the Bureau arbitrarily divided Kentucky into six territories for rate purposes. This territorial classification was shown to be a necessary and a reasonable one.

■ Appellants finally complain that while the new rates are to be utilized by the insurance companies represented by the Bureau, they may not be justified or even desirable from an individual company standpoint. This may be true, and it was anticipated by the Special Deputy Commissioner that deviations would perhaps be sought under KRS 304.631. However, individual insurance company experience does not furnish adequate statistical information for the fixing of basic automobile liability insurance rates, and the legislature has recognized this in permitting a rating bureau to represent many insurance companies in seeking an acceptable average rate. A basic uniformity of rates is of practical utility in this field and the legis-

lature has authorized it. The benefits of the scheme outweigh the discrepancies that may arise as between individual insurance companies.

 It may be pointed out that while appellants have attacked various aspects of the rate changing procedure and the calculations and conclusions which fully support the new rates, they failed to introduce evidence which would justify their position or impair the soundness of the Special Deputy Commissioner's findings and conclusions. On this record we cannot find the approved rates excessive, inadequate or unfairly discriminatory, nor can we find that the Insurance Commissioner in approving the rates acted arbitrarily, unreasonably or capriciously.

The judgment is affirmed.